# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYUNG KEE HWANG AND LINDA HWANG, | : : : : CIVIL ACTION NO. |
| Plaintiffs, | : : JURY TRIAL DEMANDED |
| vs. | : : |
| LA COLOMBE TORREFACTION, INC., | : : |
| and | : : |
| LCT OPCO LLC d/b/a "LA COLOMBE," | : : |
| Defendants. | : |

## **COMPLAINT**

Plaintiffs Myung Kee Hwang and Linda Hwang (collectively "Plaintiffs" or "Hwangs"), by and through their attorneys, file this Complaint against La Colombe Torrefaction, Inc., and LCT OpCo LLC d/b/a "La Colombe", and state as follows:

## **PARTIES**

1. Plaintiffs, Myung Kee ("Nick") Hwang and Linda Hwang, husband and wife, are individuals residing at 1414 South Penn Square, Unit 9B, Philadelphia, PA 19102.

2. Defendant La Colombe Torrefaction, Inc. is a corporation organized under the laws of Pennsylvania with its principal office at 2620 E. Tioga Street, Philadelphia, PA 19134.

3. Defendant LCT OpCo LLC is a Pennsylvania limited liability company with its principal office at 2600 E. Tioga Street, Philadelphia, PA 19134. Upon information and belief, LCT OpCo LLC is the successor-in-interest to La Colombe Torrefaction, Inc. and has assumed or continues the operations and obligations of La Colombe Torrefaction, Inc. La Colombe

Torrefaction, Inc. and its successor LCT OpCo LLC are both referred to hereinafter in this Complaint as "La Colombe" and collectively as "Defendants".

## INTRODUCTION

4. This is a straightforward breach of contract action between the Hwangs and La Colombe involving the breach of an Exclusive License Agreement that has been in place since 2014 ("License") (**Exhibit 1**), as well as misappropriation of trade secrets by La Colombe.

5. Mr. and Mrs. Hwang's business relationship with La Colombe dates back to the very first year when La Colombe was founded in 1994, when Mr. and Mrs. Hwang became early wholesale customers of La Colombe. In 2010, when La Colombe was in need of additional financing, Mr. and Mrs. Hwang made a capital investment in La Colombe and acquired the exclusive rights to the La Colombe business and its intellectual property in Asia (the "2010 Exclusive License Agreement").

6. In 2014, the 2010 Exclusive License Agreement was replaced by an agreement focused just on South Korea, granting the Hwangs all rights to the La Colombe business in South Korea, even to the exclusion of La Colombe itself. This was memorialized in the Exclusive License Agreement which entitles them to manufacture, sell, use, distribute and sublicense their rights covering the La Colombe System, Intellectual Property, and Licensed Products (as defined in the License) within South Korea.

7. Since at least 2014, Mr. and Mrs. Hwang have operated La Colombe coffee shops in South Korea, imported La Colombe coffee goods to South Korea, and explored opportunities to exploit their license rights within South Korea.

2
4931-2807-9964, v. 11

8.      In 2024, Mr. and Mrs. Hwang embarked on new efforts to exploit their license rights in South Korea and contacted Defendants for information, including about the La Colombe Draft Latte® canned coffee beverages.

9.      However, rather than operating in good faith under the License, Defendants have refused to provide assistance and information to Mr. and Mrs. Hwang despite repeated requests. For the first time, and without any rational basis, La Colombe now disputes the scope of the license rights as understood by the Parties for more than ten years and has refused to provide the Hwangs requested information to which the License clearly and unequivocally entitles them.

10.     Further, pursuant to the non-compete provision of the License, La Colombe is under an obligation to refrain from any activity in connection with the La Colombe System in South Korea or from investing in any business that directly or indirectly competes with the Hwangs' activities under the License.  Notwithstanding this provision, Defendants have engaged in activities supporting a competing business, Ralph's Coffee, in South Korea, which utilizes the La Colombe System.  Such actions by Defendants, which include their investment of time and resources to support and develop Ralph's Coffee in South Korea, is a breach of the License, and is a misappropriation of trade secrets that belong to the Hwangs.

11.     Accordingly, Mr. and Mrs. Hwang seek damages, attorney's fees as forth in the License, and injunctive relief to (a) stop Defendants from breaching their obligations under the License; (b) enjoin Defendants from misappropriating Mr. and Mrs. Hwang's trade secrets, and (c) require future assurances from Defendants that they will comply with their legal obligations to Mr. and Mrs. Hwang under the License going forward.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

13. This Court has personal jurisdiction over the La Colombe Defendants because (i) La Colombe has agreed to submit to the jurisdiction and venue of this Court under the License, (ii) they maintain their corporate offices in Philadelphia, PA, and (iii) they are incorporated in Pennsylvania.

14. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 because (i) La Colombe has agreed to it under the License, wherein it "irrevocably waive[d] any objection" to such venue for "any action brought by one of [the Parties] against the other" in connection with the License, (ii) a majority of the events or omissions giving rise to the claims detailed herein occurred in this district, and (iii) the La Colombe Defendants are subject to the personal jurisdiction of this Court.

## FACTS

15. La Colombe was founded in 1994 by Todd Carmichael and Jean Philippe Iberti in Philadelphia, PA.

16. Mr. and Mrs. Hwang's interest in La Colombe originated in 1994 when they were first introduced to La Colombe's coffee products and had business relationships with the co-founders and officers of La Colombe, including co-founders Todd Carmichael and Jean Philippe Iberti and Chief Operating Officer Tobin Bickley.

17. In 2010, La Colombe was struggling to meet its financial needs to grow and expand the business. As a result, Mr. and Mrs. Hwang invested substantial monies to assist La Colombe with its business and obtained a minority ownership interest in La Colombe.

18. In addition to a minority ownership stake in La Colombe, Mr. and Mrs. Hwang were granted an exclusive license which, among other things, granted the Hwangs the exclusive rights to operate one or more businesses using La Colombe's trademarks, service marks, trade names, brand, logos and other distinctive identifications, and to distribute the line of La Colombe products in all of Asia (the "2010 Exclusive License Agreement").

19. Mr. and Mrs. Hwang also loaned La Colombe's affiliate Café Development Group NYC, LLC, money to pursue investment and business opportunities in New York City.

20. Eventually, the 2010 Exclusive License Agreement covering the continent of Asia was renegotiated and was replaced by the 2014 License for South Korea.

21. Since 2014, Mr. and Mrs. Hwang have operated businesses in South Korea pursuant to the License and have conducted business development activities to exploit and sublicense their rights in South Korea.

**La Colombe's Contractual Obligations to Mr. and Mrs. Hwang Per the License**

22. The License grants Mr. and Mrs. Hwang a fully paid, royalty-free and perpetual right, license, and privilege to use the La Colombe System, the Licensed Marks, and the Intellectual Property within the Field of Use in South Korea, and to manufacture, sell and distribute La Colombe Coffee in South Korea. (Exhibit 1 at ¶ 4.1.) Each of these terms is specifically defined in the License.

23. As the License makes clear, not only do the Hwangs have the exclusive right to use the La Colombe Marks in South Korea, but also to the La Colombe System, which is defined to include "*operation of retail coffee shops and coffee roasting operations under a proprietary operating system….*" The La Colombe System further includes "*the Licensed Marks, designs and color schemes for coffee shops, signs, equipment layouts, formulas and specifications for certain*

5
4931-2807-9964, v. 11

*food products, roasting of coffee, methods of inventory and operation control, bookkeeping and accounting and manuals covering business practices and policies, and general business and distribution operations.*" (Exhibit 1 at ¶¶ 1.1 & 3.8).

24. The License further defines the Licensed Marks as "*trademarks, service marks, trade names, brands, logos and other distinctive identifications, owned by La Colombe or its Affiliates, used in connection with the La Colombe System and/or owned by La Colombe or its Affiliates* **currently in existence or to be created** *and owned by La Colombe or its Affiliates….*" (Exhibit 1 at ¶ 3.2) (emphasis added).

25. To ensure quality control, the License obligates La Colombe to "*provide Licensee with such manuals and other materials as is generally provided to other cafe operators to ensure consistency with such standards, and to the extent Licensor prepares and distributes other written quality control standards to other licensee of Licensed Products or the La Colombe System, it shall provide such written standards to Licensee*." (Exhibit 1 at ¶ 7.1.)

26. Further, La Colombe is obligated by the License to "*communicate and provide to Licensee its know-how,* **new developments***, techniques and* **improvements in all areas of its or its Affiliates' businesses***, including but not limited to, cafe operations, coffee roasting operations, and distribution operations*" and to "*provide Licensee with a copy set of all its business manuals, operations manuals, and quality control procedures*". (Exhibit 1 at ¶¶ 8.1 & 8.3) (emphasis added).

27. Moreover, "*[a]t Licensee's request not more than once each calendar quarter*," La Colombe is required to provide Licensee with its wholesale pricing list. (Exhibit 1 at ¶ 9.2(a).)

28. The License also contains a Non-Competition provision which provides that La Colombe is not to "*engage in any activity or business operation, including importation and*

*exportation, related to, arising out of, or in connection with Coffee, the Licensed Marks, the Intellectual Property, or the La Colombe System, within the Licensed Territory, or **invest in any business that directly or indirectly competes with Licensee's activities under this Agreement within the Licensed Territory*.*" (Emphasis added).

29. In case of any disputes commenced by the Licensor, the Licensor is to "*pay Licensee's reasonable attorneys' fees and costs in connection with the dispute or legal proceeding for any issue(s) and or matter(s) that are settled, or ruled in favor of Licensee by a court of competent jurisdiction*." (Exhibit 1 at ¶ 16.12).

30. As successor in interest to La Colombe, LCT OpCo LLC is also bound by these provisions of the License.

## La Colombe's Unlawful Activities

31. Ralph's Coffee is a fairly new retail coffee shop which started in 2014 in New York City and is owned and operated by Ralph Lauren. Since 2014, Ralph's Coffee has expanded its retail locations to numerous locations around the world, including Seoul, South Korea. Ralph's Coffee has partnered with La Colombe to sell La Colombe coffee and coffee roasted by La Colombe. (**Exhibit 2**).

32. In late 2024, Mr. and Mrs. Hwang became aware of Ralph's Coffee entering the Korean market with retail stores in Seoul, South Korea.

33. On September 28, 2024, Mrs. Hwang received information from Janet Kim, a former employee of La Colombe, who informed Mrs. Hwang that La Colombe was heavily involved in establishing Ralph's Coffee, from coffee selection, product development, and packaging and label design. She later received confirmation from Tobin Bickley, the former Chief Operating Officer of La Colombe, that La Colombe had a Supply and Service Agreement with

7
4931-2807-9964, v. 11

Ralph's Coffee, which included provisions on products and services, including design, equipment and consultation.

34. On October 31, 2024, Mr. and Mrs. Hwang, through their counsel, wrote to La Colombe to inform them of a potential infringement of Mr. and Mrs. Hwang's intellectual property rights in Korea by Ralph's Coffee pursuant to Paragraph 6.4 of the License. Mr. and Mrs. Hwang also requested copies of business manuals, operations manuals, and quality control procedures related to the La Colombe System and products pursuant to Paragraph 8.3 of the License. No substantive response was ever received from La Colombe regarding Mr. and Mrs. Hwang's October 31, 2024 request for information pursuant to the License.

35. On February 18, 2025, Mrs. Hwang received a telephone call from Frank Eden of La Colombe who for the first time informed Mrs. Hwang that La Colombe would never provide any information related to La Colombe's canned coffee products to Mr. and Mrs. Hwang. Mr. Eden further stated that the Draft Latte® canned coffee beverage was not a product covered by the License. Upon information and belief, Frank Eden is the Senior Vice President of Wholesale at La Colombe.

36. Mrs. Hwang followed up with Frank Eden on March 14, 2025 to again request documentation necessary to address concerns about Ralph's Coffee utilizing the La Colombe System in South Korea in violation of the License. Additionally, she requested (1) documentation to demonstrate that La Colombe informed Ralph's Coffee about the Hwangs' License, (2) information related to La Colombe's Draft Latte® canned coffee beverage product, including recipe and manufacturing details, (3) packaging information for the 12 oz. coffee beans, including artwork and the vendor La Colombe uses in the United States for cardboard packaging and vinyl bases, (4) wholesale distributor pricing for coffee beans and Draft Latte® cans, and (5) La

Colombe's business manuals, operations manuals, and quality control procedures (hereinafter "Information Request").

37. Rather than cooperate with Mr. and Mrs. Hwang's requests, La Colombe has refused to comply with any of the Hwangs' Information Requests. Through its counsel, La Colombe responded in writing to Mrs. Hwang's March 14, 2025 letter by expressly denying that La Colombe's Draft Latte® canned coffee beverage drink is covered by the License.

38. La Colombe's contention that coffee beverages, such as the Draft Latte® canned coffee beverage, are not within the scope of the License defies the plain language of the License and is a clear beach of the License's Grant of Rights covering La Colombe goods in existence or to be created.

39. Further, La Colombe's refusal to provide information regarding the La Colombe coffee products such as the 12 ounce coffee beans and the Draft Latte® cans is a breach of the License's provision which obligates La Colombe to provide Mr. and Mrs. Hwang with information about its products, new developments, and know-how in all areas of its businesses. (Exhibit 1 at ¶ 8.1.)

40. La Colombe's refusal to provide the Hwangs information regarding La Colombe's operations and products, such as business manuals, operation manuals, quality control procedures, recipes, manufacturing information and other necessary information is a violation of numerous provisions of the License.

41. The Hwangs' written requests on October 31, 2024 and March 14, 2025 were followed by additional requests on April 16, 2025 and thereafter, as well as numerous letters exchanged by their counsel.

4931-2807-9964, v. 11

42. La Colombe has provided numerous excuses and insisted on unwarranted preconditions in response to the Hwangs' many requests for information. To date, La Colombe has not turned over any of the items contained in the Hwangs' Information Request, including such key items as the La Colombe business operation manuals, recipes or manufacturing information despite more than nine months of the Hwangs requesting them.

**Breach of Non-Competition Provision and Misappropriation of Trade Secrets**

43. Mrs. Hwang was informed by Janet Kim, a former employee of La Colombe, who herself was personally involved in Ralph's Coffee on behalf of La Colombe, that La Colombe was heavily engaged in establishing Ralph's Coffee, from coffee selection, product development, and packaging and label design.

44. Further, Mrs. Hwang has received information from a former La Colombe executive (Tobin Bickley, COO) that La Colombe had a Supply and Service Agreement with Ralph's Coffee, which included provisions on La Colombe's products and services, including design, equipment and consultation.

45. Based on information received from Janet Kim and Tobin Bickley, on information and belief, La Colombe has invested substantial resources to assist Ralph Lauren in establishing the Ralph's Coffee business, including disclosure of the La Colombe System through its Supply and Service Agreement with Ralph's Coffee. Ralph's Coffee has now entered the Korean market competing directly with Mr. and Mrs. Hwang. On information and belief, it is utilizing information obtained from La Colombe regarding the La Colombe System.

**Harm to the Hwangs**

46. The Hwangs have invested considerable amounts of time and money, both as early investors in La Colombe, and in their business as the La Colombe Licensee in South Korea. La

4931-2807-9964, v. 11

Colombe, with the Hwangs' investment, has developed its proprietary products, as well as the distinctive La Colombe System, at great expense, and through years of experimentation, research, and development. If Defendants are not enjoined from their contract breaches and misappropriation of trade secrets, they will cause severe and irreparable harm to the Hwangs.

47. With respect to the La Colombe System and trade secrets, for which the Hwangs are the exclusive licensees in South Korea, there is a considerable threat that this confidential and proprietary information has been or will be disclosed or utilized by Ralph's Coffee in South Korea, which will destroy the trade secret value of the information. Upon information and belief, Ralph's Coffee is already utilizing confidential and proprietary information about the La Colombe System in South Korea.

48. La Colombe's actions significantly impair Mr. and Mrs. Hwang's ability to operate retail coffee shops and exploit their License rights in South Korea. As La Colombe has withheld critical information *e.g.,* information needed to manufacture and sell La Colombe coffee products in Korea, Mr. and Mrs. Hwang are critically hampered in their ability to exploit their rights in South Korea, including selling and manufacturing La Colombe Draft Latte® products, operating La Colombe cafes, and sublicensing their rights to others including Ralph's Coffee.

49. As La Colombe now disputes the scope of the License, Mr. and Mrs. Hwang are also constrained in their ability to sublicense their rights in South Korea, as there is uncertainty in what those rights are.

50. Additionally, by disclosing the La Colombe System to Ralph's Coffee and assisting with the design and establishment of Ralph's Coffee, which has entered the Korean market and competes directly with the Hwangs, La Colombe has introduced a direct competitor to the Korean

market that uses the La Colombe System. This constitutes a breach of the contract's non-compete provision, as well as a misappropriation of trade secrets.

51. With this action, the Hwangs seek to vindicate their rights and preclude any further misuse of their trade secret information, obtain the information owed them under the License, and obtain compensation for their damages.

## COUNT I – BREACH OF CONTRACT

52. Plaintiffs incorporate by reference the allegations of the preceding paragraphs above as if set forth at length herein.

53. In 2014, La Colombe and the Hwangs entered into the Exclusive License Agreement, wherein they agreed to the terms detailed above and set forth fully in Exhibit 1, which is incorporated herein by reference.

54. The License is a valid and enforceable contract under the laws of Pennsylvania and is supported by adequate consideration.

55. Defendants violated the License, as set forth in detail above, by

(1) Withholding and refusing to provide information owed to the Hwangs pursuant to e.g., paragraph 8.3 of the License, such as copies of business manuals, operations manuals, and quality control procedures related to the La Colombe System and Products;

(2) Withholding and refusing to provide information related to La Colombe's Draft Latte® canned coffee beverage product, including recipe and manufacturing details, as required by the License's Grant of Rights, which explicitly covers La Colombe goods in existence or to be created;

(3) Withholding and refusing to provide packaging information for the 12 oz. coffee beans, including artwork and vendor information for cardboard packaging and vinyl bases, in violation of paragraph 8.1 of the License which requires La Colombe to provide information about its products, new developments, and know-how in all areas of its businesses;

(4) Withholding and refusing to provide wholesale distributor pricing for coffee beans in violation of paragraph 9.2(a) of the License;

(5) Investing substantial resources to assist in the development and establishment of Ralph's Coffee, which has now entered the Korean market in direct competition with the Hwangs, in violation of paragraph 10.1 of the License, which provides that La Colombe must not "invest in any business that directly or indirectly competes with Licensee's activities under this Agreement within the Licensed Territory"; and

(6) Violating the Hwangs' exclusive license rights by carelessly sharing the La Colombe System with Ralph's Coffee, failing to inform Ralph's Coffee about the Hwangs' License, and failing to take steps to prevent violation of the Hwangs' exclusive license rights after sharing the La Colombe System and products with Ralph's Coffee.

56. By reason of the above-alleged acts and conduct of the Defendants, the Hwangs have suffered injury and will continue to suffer injury, including irreparable injury. The monetary value of this irreparable injury will be difficult if not impossible to ascertain, and the Hwangs will be without an adequate remedy at law unless Defendants are enjoined.

57. Pursuant to Paragraph 16.9 of the License, the Parties have acknowledged that a breach of the License would cause irreparable damage to the other and that a remedy at law would

not be adequate. Further, they have agreed that, in the event of such breach, the non-breaching Party would be entitled to seek appropriate injunctive relief restraining the breach.

58. The Hwangs are also entitled to recover damages from Defendants in an amount to be determined at trial, as well as attorneys' fees pursuant to paragraph 16.12 of the License.

**COUNT II – VIOLATION OF DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 ("DTSA")**

59. Plaintiffs incorporate by reference the allegations of the preceding paragraphs above as if set forth at length herein.

60. The La Colombe System, and the Intellectual Property covered by the License, which includes, among other things, formulations, recipes, methods, processes, general commercial and sales strategies and know-how of La Colombe "currently in existence or to be created" constitutes a trade secret within the definition of the DTSA (18 U.S.C. § 1839(3)) (hereinafter the "La Colombe Trade Secrets").

61. The Hwangs are the Owners of the La Colombe Trade Secrets in South Korea under 18 U.S.C. § 1839(4), by virtue of the fact that they are the persons in whom the Trade Secrets are reposed via the License.

62. The Hwangs have taken reasonable steps to maintain the secrecy of the La Colombe Trade Secrets, including by, among other things, requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to the La Colombe Trade Secrets and by taking other reasonable measures.

63. The La Colombe Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by others in the coffee industry because such information is extremely valuable to the

Hwangs, crucial to the operation of their business, and if available to others, would enable them to compete with the Hwangs to their detriment.

64. Other than through Defendants' improper disclosure to Ralph's Coffee, the La Colombe Trade Secrets are not known to others and are not readily ascertainable by proper means by persons who could derive value from their disclosure or use.

65. Defendants misappropriated the La Colombe Trade Secrets by improper means and without authorization, including by disclosing the La Colombe Trade Secrets to Ralph's Coffee without the Hwangs' express or implied consent and without any precautions to prevent the establishment of Ralph's Coffee in South Korea in violation of the Hwangs' rights.

66. Defendants' disclosure of the La Colombe Trade Secrets constitutes misappropriation because, among other reasons, at the time of such disclosure, Defendants knew or had reason to know that the knowledge of the La Colombe Trade Secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

67. Defendants acquired, disclosed, and/or distributed the La Colombe Trade Secrets with actual or imputed knowledge that such trade secrets were acquired, disclosed, and/or distributed through improper means. Such improper means include, but are not limited to, breach of an express or implied duty to maintain the secrecy of, or to limit the use or disclosure of, the La Colombe Trade Secrets.

68. Defendants will, if not preliminarily and permanently enjoined by the Court, continue to commit acts of misappropriation and receive benefits from such misappropriation, causing the Hwangs immediate and irreparable harm, damage, and injury.

4931-2807-9964, v. 11

69. By reason of the above-alleged acts and conduct of Defendants, the Hwangs have suffered injury, including irreparable injury, and damages. The monetary value of this irreparable injury will be difficult if not impossible to ascertain, and the Hwangs will be without an adequate remedy at law unless Defendants are enjoined.

70. The Hwangs are also entitled to recover compensatory and exemplary damages from Defendants, including but not limited to the losses resulting from their wrongful conduct and any unjust enrichment caused by their misappropriation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

A. Judgement that Defendants have breached the License and misappropriated trade secrets in violation of the DTSA;

B. Judgement that the License covers all coffee goods as defined in the License, including all goods currently in existence or goods to be created in the future;

C. An Order directing Defendants to provide the Hwangs all the information to which they are entitled under the License;

D. An Order directing Defendants to act in good faith in connection with the License and Licensee;

E. Preliminary and permanent injunctive relief enjoining and restraining Defendants and each of their owners, officers, directors, partners, employees, agents, servants, attorneys, successors, subsidiaries, assigns, licensees, and all other persons in privity or acting in concert with them, from (1) breaching their obligations under the License, including breaching the License's Grant of Rights and Non-Competition provision; and (2) using, copying, publishing,

disclosing, transferring, or selling the La Colombe Trade Secrets or other confidential information that may be determined to be trade secret information to any person or entity that may use that information in South Korea;

F. Preliminary and permanent injunctive relief enjoining and restraining Defendants and each of their officers, directors, partners, employees, agents, servants, attorneys, successors, assigns, licensees, and all other persons in privity or acting in concert with them, from providing any information, products, or services to Ralph's Coffee in South Korea;

G. Damages in an amount to be determined at trial;

H. An award of attorneys' fees pursuant to Paragraph 16.12 of the License; and

I. Such other and further relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

Dated: Sept. 17, 2025                        Respectfully submitted,


By: /s/ *Firouzeh Nur-Vaccaro*

Firouzeh Nur-Vaccaro, Esq.
firouzehnurvaccaro@kimiplawgroup.com
Bar No. 312173

Y. Jae Kim, Esq.
Bar No. 205117
yjaekim@kimiplawgroup.com


**KIM IP LAW GROUP LLC**
129 W. Evesham Road
Voorhees, NJ 08043
Tel: (856) 520-8988
Email: lit@kimiplawgroup.com
*Attorneys for Plaintiffs*